# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LAVINIA PRINCE, *individually and on behalf of all others similarly situated* | Case No: 1:22-cv-01753 |
| Plaintiffs, | |
| v. | |
| BRICKYARD HEALTHCARE, INC. C/O Corporation Service Company | **JURY TRIAL DEMANDED** |
| BRICKYARD LP d/b/a Golden LivingCenters | **CLASS ACTION** |
| MERRILLVILLE OPERATING, LLC C/O Corporation Service Company | |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff, Lavinia Prince, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby brings this Class and Collective Action against Brickyard Healthcare, Inc., Brickyard LP d/b/a Golden LivingCenters, and Merrillville Operating, LLC (herein after "Golden Living" or "Defendants") to recover unpaid overtime compensation, liquidated damages, attorney's fees, costs, and other relief as appropriate. Plaintiff brings this lawsuit as (a) a collective action under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq*. and (b) a Rule 23 class action under Indiana state law including the

1

Indiana Wage Payment Statute ("IWPS"), I.C. §22-2-5-1, *et. seq*. Plaintiff's allegations herein are based upon knowledge as to matters relating to herself and upon information and belief as to all other matters:

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

2. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3. Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

4. Supplemental jurisdiction over the state law claims of Plaintiff and all others similarly situated is based on 28 U.S.C. § 1367, in that the state law claims are so related to the FLSA claims that they form part of the same case or controversy

5. Venue lies in in this District pursuant to 28 U.S.C. § 1391 because the Defendants are incorporated in this District and are subject to personal jurisdiction

in this District.

## PARTIES

6. Plaintiff, Lavinia Prince ("Plaintiff" or "Prince"), is an adult resident of Indiana who was an employee of a Golden LivingCenter in Merrillville, Indiana, operated by Brickyard LP, from approximately 2016 until November 2021. Golden LivingCenters later rebranded as Brickyard Healthcare. Plaintiff's partially redacted Consent to Become a Party Plaintiff is attached as Exhibit A.

7. Additional putative Collective members were or are employed by Defendants as hourly employees during the past three years and their consent forms will also be filed in this case.

8. Defendant Brickyard LP is a Delaware Corporation with a registered principal office address of 4145 Powell Rd., Ste C, Powell, OH 43065. Defendant Merrillville Operating, LLC is also a Delaware Corporation and a subsidiary of Brickyard LP with a registered principal office address of 8800 Virginia Pl, Merrillville, IN 46410. Defendant Brickyard Healthcare, Inc. is also incorporated in Delaware with a registered principal office address of 2647 Waterfront Parkway East Drive, Suite 100, Indianapolis, Indiana 46214.

9. Defendants, collectively, are a healthcare provider operating over 20 locations throughout the state of Indiana who offers, according to their website, "quality healthcare and enriching the lives of [their] patients and residents" on long-

and short-term bases.

## STATEMENT OF FACTS

10. Prince worked for Defendants as a certified nursing assistant ("CNA"), often putting in long hours of over 50 hours per week and, not uncommonly, exceeding 70 hours per week, over the course of almost 5 years. Her hourly rate at the time of her departure was $15.30 per hour, which raised around April 2020 from her previous hourly rate of $13.50. However, she often worked nights on shifts two and three, during which she earned a shift differential of $1.00 to $2.00 per hour, which varied throughout her tenure. Because she still worked the second and third shifts so often, and earned the shift premiums accordingly, her hourly base-rate by the time she left Golden Living reached $17.30 per hour. Prince regularly worked overtime, sometimes surpassing 100 hours worked per week. She was paid at varying overtime rates throughout her time with Golden Living and was unable to parse out how such calculations were determined.

11. In addition to the base rate of pay including the shift differentials, Golden Living incorporates various routine and non-discretionary bonuses into its payment structure. These bonuses were most often offered as an incentive for picking up shifts, where if a shift was unfilled, an employee could automatically receive incentive pay or extra shift bonuses for agreeing to pick them up. Prince, more pay periods than not, picked up these shifts and received many bonuses which

are reflected in her paystubs.

12. Golden Living, as a result of the Covid-19 pandemic, also offered Covid bonuses for the essential healthcare workers under their employment. Prince received this pay sporadically throughout 2020. This guaranteed Covid bonus pay was phased out sometime in or before 2021.

13. Prince and Golden Living's other hourly employees were eligible for, and regularly received, various routine and non-discretionary bonuses in addition to their base hourly rate including shift differentials.

14. However, Golden Living failed to take the various routine and non-discretionary bonuses and shift differentials into consideration when calculating its hourly employees' regular rate of pay and resulting overtime rate premium. As a result, Golden Living did not pay the proper overtime rate under the law.

15. As non-exempt employees, Golden Living's hourly employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

16. Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

17. No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

18. Golden Living's shift premiums and other remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

19. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. Defendants carry the burden to establish that any payment should be excluded. *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000). Thus, determining the regular rate starts from the premise that all payments made to Golden Living's hourly employees for work performed are included in the base calculation unless specifically excluded by statute.

20. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any

method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

21. Plaintiff's "total remuneration" included not only her hourly pay, but also any various routine and non-discretionary bonuses. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials … and premiums paid for hazardous, arduous, or dirty work.").

22. However, Golden Living failed to incorporate these other remunerations into its hourly employees' regular hourly rate calculation, resulting in a *prima facie* violation of the FLSA.

23. Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiff and those similarly situated are entitled to overtime pay equal to one and one-half times their regular rate of pay for hours worked in excess of forty (40) hours per week.

24. Plaintiff and those similarly situated have regularly worked in excess

of 40 hours a week and have been paid overtime for those hours but at a rate that does not include Defendants' shift premium pay and numerous, routine non-discretionary bonuses as required by FLSA.

25. For example, Plaintiff's pay stub for the pay period 7/30/2020 through 8/12/2020 indicates a base hourly rate of $15.30 where all time was worked during shifts two and three, during which employees receive a shift differential of an additional $2 per hour, making the base hourly rate $17.30 during the entire pay period. On this paycheck, during the second week, 8/5/2020 through 8/12/2020, Plaintiff also earned $311 for the Covid bonus, an extra shift bonus of $625, and "Incent Hrs AM" pay of $80 ($160 for the pay period, presumably divided into each work week). However, her overtime rate does not account for these non-discretionary shift differentials and bonuses and, therefore, violates the Fair Labor Standards Act.[1]

26. As a result of these violations, Defendants are liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and expenses, interest, court costs, and any other relief deemed appropriate by the Court.

---

[1] Her overtime rate on this pay period indicates an amount higher than 1.5x the base $15.30 hourly rate, thus Golden Living may have incorporated *some* of the non-discretionary pay but it does not include ALL additional eligible earnings as required by the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.     Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of all Golden LivingCenter hourly employees who: (a) were eligible for and received shift differential pay, non-discretionary incentive and extra shift bonuses, and/or Covid pay for work performed from three years from the date of the filing of this lawsuit until the present and (b) whose overtime rates during this period did not account for this pay as required by FLSA and its attendant regulations.

28.     Plaintiff and putative Collective Members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were eligible for and did receive the non-discretionary bonuses and premium pay, but such pay was not considered a part of their regular rate for determining an overtime rate as required by law.

29.     Resolution of this action requires inquiry into common facts.

30.     These similarly situated individuals are known to the Defendants, are readily identifiable, and can be located through Defendants' payroll records, which Defendants are required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

31.     Conditional certification of this case as a collective action pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily

9

notified of this action through direct U.S. mail and/or other means including email and allowed to opt in for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the Fair Labor Standards Act.

32. There are many similarly situated current and former Golden Living employees who have not been paid their statutorily-required overtime rates and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

## IWPS CLASS ALLEGATIONS

33. Plaintiff brings Count II below, the IWPS claim arising out of Defendant's regular rate calculation policy resulting in unpaid overtime, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class: "All persons employed by Defendants (a) were eligible for and received shift differential pay, non-discretionary incentive and extra shift bonuses, and/or Covid pay for work performed from two years from the date of the filing of this lawsuit until the present and (b) whose overtime rates during this period did not account for this pay."

34. Plaintiff's state law claim (Count II) described in detail below satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

35. The class numbers in the hundreds, if not thousands, of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

36. Plaintiff is a Class Member and her claims are typical of the claims of other Class Members.

37. Plaintiff will fairly and adequately represent the Class Members and their interests, and she has retained competent and experienced counsel who will effectively represent the Class Members' interests.

38. The critical questions of law and fact are common to all Class Members since this action concerns Defendants' failure to pay the correct "amount due" in overtime wages. The illegality of these policies and practices will be demonstrated by applying general legal principles to common evidence such as standardized policies and payroll/compensation practices and records.

39. This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual class members be required to bring separate actions, this Court would be confronted with

a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and court systems, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

### COUNT I: VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY THE AMOUNT DUE IN OVERTIME WAGES

40. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

41. Brickyard LP d/b/a Golden LivingCenters is an employer within the meaning of 29 U.S.C § 203(d).

42. Plaintiff is an employee within the meaning of 29 U.S.C C 203(e).

43. The Fair Labor Standards Act and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Defendants' shift premiums and numerous bonuses do not fall into any of those exceptions. Additionally, FLSA implementing regulations make clear the regular rate of pay includes "such extra premiums as night shift differentials … and premiums paid for hazardous, arduous, or dirty work." 29 C.F.R. §778.207(b).

44. Golden Living failed to include *all* shift premiums and other non-discretionary bonuses into the regular rate of pay for Plaintiff and all others similarly situated when calculating overtime rates. The failure to include this remuneration in overtime computations violates Section 7(a) of the FLSA, because Defendants' employees are working overtime without being paid the statutorily required rates. 29 U.S.C § 207(a).

45. At all relevant times, Defendants had a policy and practice of willfully refusing to pay Plaintiff and all Collective Action Members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

46. As a result of Defendants' willful failure to compensate Plaintiff and the Collective Action Members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants have violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

47. Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendants' violations of FLSA, Plaintiff and all others similarly situated are owed

overtime wages at a rate to be calculated by taking the difference between the overtime they should have received during the relevant time period and the overtime they did receive during the time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendants are statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

48. Plaintiff and all others similarly situated are entitled to back pay, liquidated damages in an amount equal to their back pay, plus reasonable attorney's fees, costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

### COUNT II: VIOLATIONS OF IWPS, I.C. § 22-2-5-1, *et seq.* -- FAILURE TO PAY THE AMOUNT DUE IN OVERTIME WAGES

49. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

50. At all times relevant, Plaintiff and Class Members have been entitled to the rights, protections, and benefits provided under the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, *et seq.*

51. During all times relevant to this action, Defendants were the "employer" of Plaintiff and the class members within the meaning of the IWPS, or otherwise subject to its statutory provisions. I.C. § 22-2-5-1(a).

52. During all times relevant to this action, Plaintiff and the class members were Defendants' "employees" within the meaning of the IWPS. I.C. § 22-2-5-1(a).

53. Pursuant to IWPS, "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." I.C. § 22-2-5-1(a).

54. Plaintiff and Class Members are victims of uniform and employer-based compensation policies in violation of the IWPS.

55. Defendants violated the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, *et seq.*, by failing to pay Plaintiff and all other similarly situated employees the amounts due for all overtime wages to which they are entitled by operation of law.

56. Plaintiff and all other similarly situated employees seek to recover under the IWPS the difference between what they were paid by Defendants for overtime worked and the amount to which they were entitled by law. Plaintiff and all other similarly situated employees do not seek recovery of any further amounts they may be owed under any collective bargaining agreement or any other potential source of entitlement.

57. Specifically, as discussed above, Defendants failed to include *all* shift premiums and other non-discretionary bonuses into the regular rate of pay for Plaintiff and all others similarly situated when calculating overtime rates, resulting in Plaintiff and Class Members not being paid all amounts due for overtime hours

worked.

58. As a result of these practices, Defendants paid Plaintiff and Class Members less than the amount due under the law.

59. Defendants' actions and/or omissions were not in good faith.

60. Plaintiff and the Class are entitled to damages equal to the amount of unpaid wages, along with an additional amount equal to two (2) times the amount of wages as liquidated damages, plus reasonable attorney's fees and costs. I.C. § 22-2-5-2.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

a. Designation of this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendants to provide to Plaintiff a list of all persons employed by them who were eligible for and did receive any shift-differential, incentive bonus, extra shift bonus and/or other non-discretionary bonuses on at least one pay check on which they also earned overtime compensation for work above 40 hours as required. This list shall include the last known address, email, and telephone number of each such person, so that Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate;

b. Certification of the state law claim set forth in Count II above as a class action pursuant to Fed. R. Civ. P. 23;

c. A complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

    d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

    e.    An award of recovered back pay and an equal amount in liquidated damages;

    f.    An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

    g.    An award of prejudgment and post-judgment interest;

    h.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees, and an award of a service payment to the named Plaintiff; and

    i.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Date: September 2, 2022        Respectfully submitted,

*/s/ Scott D. Gilchrist*
Scott D. Gilchrist (#16720-53)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
Fax: (317) 636-2593
sgilchrist@cohenandmalad.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street NE, 3rd Floor
Washington, DC 20002
Tel: (202) 470-3520/Fax: (202) 800-2730
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

*Attorneys for Plaintiff and the Proposed Collective*